**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re:<br>Frank C. Nelsen,<br>Debtor | ) | Bankruptcy No. 23-81464 |
| | ) | Chapter 7 |
| Nyle Anderson,<br>Plaintiff<br>v.<br>Frank C. Nelsen,<br>Defendant | ) | Judge Lynch<br><br>Adversary No. 24-96004 |

## MEMORANDUM OPINION

For more than twenty years, Nyle Anderson and Frank Nelsen were business partners in various endeavors including the sale of insurance products. Along the way, they struck up a friendship. But when they eventually went their separate ways, their parting proved to be less than amicable. Eventually, Anderson sued Nelsen in state court, seeking damages for various tort claims. Nelsen counterclaimed and their respective claims went to trial. Anderson obtained a jury verdict for damages in the total amount of $5,736,000, which the trial court reduced to $5,060,500 and the Illinois appellate court further reduced to $5,035,500. Nelsen then filed this bankruptcy case.

Anderson commenced this adversary proceeding to preserve his damages award. His adversary complaint objects to Nelsen receiving a discharge under four provisions of section 727(a) of the Bankruptcy Code: 727(a)(2) (Count I), 727(a)(3) (Count II), 727(a)(4) (Count III) and 727(a)(5) (Count IV). It goes on to seek exception of Anderson's debt from discharge under section 523(a): 523(a)(2)(A) (Count V),

523(a)(4) (embezzlement) (Count VI), 523(a)(6) (Count VII), and 523(a)(4) (fraud in a fiduciary capacity) (Count VIII).

On the eve of trial, the parties filed cross-motions for judgment under Fed. R. Bankr. P. 7052(a) through a "trial on the papers," after stipulating that the evidence on all the issues was already of record without need for a further evidentiary hearing. For the reasons discussed below, the cross-motions on the section 523(a) counts are each granted in part and denied in part, and judgment will be entered in favor of the Plaintiff on Counts V and VII and in favor of the Debtor on Counts VI and VIII. As announced in court on November 12, 2026, however, the Court is providing the parties an opportunity to consider whether to go forward on the remaining counts under 11 U.S.C. § 727(a) in light of these rulings and will not be entering a partial judgment at this time.

## I. PROCEDURAL HISTORY

Frank C. Nelsen filed his chapter 11 bankruptcy petition on November 28, 2023. In it he lists only three unsecured creditors, one being Nyle Anderson, on his Official Form B104. This entry describes the Anderson claim to be unsecured in the amount of $5,736,000, listing it as: "Monetary Judgment – 14th Judicial Circuit, Whiteside County, Illinois." (BK ECF No. 1 at 14-15.) Early in the chapter 11 case Anderson sought its dismissal. (BK ECF No. 30.) Anderson's motion was denied after an evidentiary hearing. (BK ECF No. 78.) The Debtor proposed a plan of reorganization, but after it became apparent that the plan could not be confirmed, Nelsen moved to convert the case to chapter 7. Anderson objected to this, too, and

again sought dismissal. The Court granted the Debtor's motion to convert on February 20, 2025 (BK ECF Nos. 161, 162), which decision was affirmed on appeal on July 10, 2025, (BK ECF No. 205). *See Anderson v. Nelsen*, No. 25-cv-50090, 2025 U.S. Dist. LEXIS 131094, at *13 (N.D. Ill. July 10, 2025).

Meanwhile, Anderson filed an adversary complaint to object to Debtor's discharge under 11 U.S.C. §§ 727(a)(2), (3), (4), and (5),[1] and to request a determination that his debt is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (4), and (6). In his answer to the complaint, Nelsen denied the material allegations of each count and alleged "unclean hands" as an affirmative defense to Counts V, VI, VII and VIII. After allowing the parties the opportunity to conduct discovery,[2] a Final Pretrial Order was entered setting the matter for trial on Counts V through VII to begin on September 29, 2025. (ECF No. 30.) But before the trial began, the parties asked the Court to amend its Final Pretrial Order and permit each of them to instead move for judgment on the papers with respect to all counts and defenses asserted.

After conducting a hearing, the Court granted the joint request and amended its Final Pretrial Order by striking the scheduled evidentiary hearing and granting

---

[1] The bankruptcy case was proceeding under chapter 11 when the adversary complaint was filed. Technically the complaint sought a determination under 11 U.S.C. § 1141(d)(3)(C) that confirmation of a plan would not discharge the Debtor. Once the case was converted to chapter 7, the parties and the Court treated the matter as directly under section 727(a) without requiring amendment to the complaint.

[2] Prior to filing the adversary complaint, Anderson was given leave to take discovery under Rule 2004 by order entered January 18, 2024, which authorized him to issue subpoenas and take depositions through July 19, 2024. (BK ECF No. 27.) In the adversary case, the Court initially entered an order on June 12, 2024, allowing for discovery in the adversary proceeding through October 7, 2024. (ECF No. 15.) By agreement of the parties, the Court stayed discovery before that deadline, while certain matters and motions proceeded in the bankruptcy case. In April 2025, the Court orally ordered discovery could recommence, through June 2025, later extending that deadline through the end of July 2025.

Anderson and the Debtor leave to file cross-motions for judgment under Fed. R. Bankr. P. 7052. At the September 29 hearing, the Court discussed the procedures to be used for briefing the cross-motions, to which the parties consented on the record, and the Court memorialized those procedures by written order. (ECF No. 38.) The Court directed the parties to submit with their motions statements of material fact and opposing statements and supporting affidavits and other documents in the form and manner provided by Local Rules 7056-1 and 7056-2, emphasizing that failure to properly dispute statements of fact would be deemed admissions. The Court also stressed that despite its use of the procedures for summary judgment, neither the standard nor presumptions for summary judgment would apply to the requested "trial on the papers."[3]

The parties proceeded to present their respective cases for the requested judgment on the papers. Nelsen filed a motion for judgment (ECF No. 39), memorandum in support (ECF No. 40) and amended statement of material facts (ECF No. 61). The Plaintiff answered, filing his response to motion (ECF No. 49) and response to amended statement of material facts, (ECF No. 66). Anderson followed suit for his claims, filing his motion for judgment (ECF No. 43), memorandum in support (ECF No. 45) and amended statement of material facts (ECF No. 63), to which the Debtor filed his responses to the motion (ECF No. 48) and to the amended statement of material facts, (ECF No. 65). Additionally, in connection with the amended statements of material fact, the Debtor filed a motion in limine to exclude

[3] The briefing schedule was later amended after the parties initially failed to comply with the Court's directions as to statements of material fact and responses. (ECF No 60.)

certain categories of evidence and testimony. (ECF No. 62.) The Plaintiff also filed a motion in limine seeking to admit jury instructions as rebuttal evidence and to apply collateral estoppel. (ECF No. 64.) The Court heard oral argument on the cross-motions for judgment, and with leave, Anderson filed a short brief of additional authority. (ECF No. 77.) Largely from these materials the Court makes its determination.[4]

## II. JURISDICTION

The district court has "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). In accordance with 28 U.S.C. § 157(a), the district court has referred this and all other cases under title 11 to this Court. N.D. Ill. R. 40.3.1(a). The adversary complaint objects to discharge and in the alternative seeks to except Anderson's debt from any discharge granted, and, therefore, the issues presented are central to the administration of the bankruptcy estate and are core matters over which this Court has authority to enter final orders. 28 U.S.C. § 157(b)(2)(I), (J). *Harris v. Foster (In re Foster),* Nos. 20-81885, 21-96005, 2022 Bankr. LEXIS 3357, at *3 (Bankr. N.D. Ill. Nov. 23, 2022).

[4] Where appropriate, the Court also will take judicial notice of the docket in the bankruptcy case. *See In re Miceli*, 587 B.R. 492, 495 (Bankr. N.D. Ill. 2018).

## III. DISCUSSION

### A. Motions in Limine.

As an initial matter, the Court will address the motions in limine. The Court entered its final pretrial order in this matter on August 20, 2025, requiring exchange of all exhibits anticipated to be offered into evidence by September 15, 2025. (ECF No. 30, the "Final Pretrial Order") The Final Pretrial Order made clear that no other exhibits could be introduced except for rebuttal purposes and that no relief from the Final Pretrial Order would be allowed except for good cause shown. The Final Pretrial Order also required that any expert witness be disclosed by September 15, 2025, except for rebuttal witnesses, and required that the proponent disclose the subject of the expert testimony and whether the expert had prepared a written report. (*Id.*) Anderson and Nelsen each filed their lists of witnesses on September 15, 2025. (ECF Nos. 31, 32.) Neither listed any experts.

Nelsen's motion in limine concerns Anderson's references in several filings to a report and testimony of Ron Braver, purportedly an expert witness in the state court proceeding. (ECF No. 62.) A copy of a report of Ron Braver dated November 20, 2017, is attached to Anderson's statement of material facts. (ECF No. 63, Ex. 19.) Nelsen objects that Braver was not disclosed as a potential expert witness in this proceeding and has not been shown to qualify as an expert witness in this proceeding under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). He also seeks to exclude the copy of the Fifth Amended Complaint and the jury instructions from the state court matter which Anderson included with his submissions for the pending motions. (ECF No. 63, Ex. 25.) Nelsen objects that Braver

and his report were not disclosed within the time set by this Court's pretrial order and lack proper foundation.

Anderson moves in limine to request the admission of the jury instructions "as rebuttal evidence." (ECF No. 64.) He argues that the jury instructions rebut an argument he believes Nelsen is making "that the Jury did not consider the correct standard or that the standard is different from the issues pending in this Adversary Proceeding." (*Id.* at 7.) His motion further asks this Court to "apply collateral estoppel to preclude [Nelsen] from relitigating issues already decided by the State Court jury, including all documents, statements, and testimony stipulated to and considered during those proceedings." (*Id.* at 19.)

The Court finds it undisputed that Braver was not timely disclosed as an expert witness, and none of the jury instructions, Fifth Amended Complaint, or Braver report were timely disclosed in either party's exhibit list. Accordingly, they are barred by this Court's Final Pretrial Order, from which neither party timely sought relief or extension. The Court also finds that they are unnecessary as "rebuttal" evidence. Anderson seeks to admit them to rebut an argument he believes Nelsen is making against the application of collateral estoppel in this proceeding. But even without them the Court finds it proper to apply collateral estoppel.

As will be discussed more fully below with respect to the merits of Anderson's section 523 counts, the Court finds that the doctrine of collateral estoppel applies to Anderson's section 523(a)(2)(A) and (a)(6) counts. Anderson is correct that in this matter collateral estoppel warrants precluding Nelsen from relitigating certain

issues already decided by the state court jury. "Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *Du Page Forklift Servs., Inc. v. Material Handling Servs., Inc.*, 195 Ill. 2d 71, 78 (2001) (quoting *United States v. Mendoza*, 464 U.S. 154, 158 (1984)). The doctrine "promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Id.* at 77. The doctrine precludes relitigating and the re-weighing of evidence and potential inconsistent results by relying upon the judgment or verdict obtained in the prior proceedings. But the doctrine forecloses reconsideration only of issues "*necessarily* and actually decided by the jury" precluding the later court from making findings "contrary to or inconsistent with the jury's resolution of that same issue as implicitly reflected in its general verdict." *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004) (emphasis added). Findings of fact not necessary to a decision or "incidental remarks by a judge that plainly do not involve decision of the issues in the case are not entitled to preclusive effect." 18 *Wright & Miller*, *Federal Practice & Procedure* § 4420 (3d ed.).

To a certain extent where a judgment or verdict is ambiguous or unclear, it may be necessary to examine the record or extrinsic items to provide context, and courts have at times looked to jury instructions, the complaint or evidence presented, to provide that context. Thus "when the basis of the jury's verdict is unclear, each of the potential theories supporting the verdict is open to contention 'unless this

uncertainty be removed by extrinsic evidence showing the precise point involved and determined.'" *Miles*, 387 F.3d at 599 (quoting *Russell v. Place*, 94 U.S. 606, 609 (1876)). For example, "when several issues have been litigated, and the jury may have supported its verdict by finding in the plaintiff's favor on any one of the issues but which one is not clear, the court is free to determine the basis of the jury's verdict unless extrinsic evidence clearly resolves the issue." *Id.* Often the issues decided can be gleaned through a "process of inference, in which it is taken that an issue was actually decided if its decision was necessary to support the result reached on the record presented in the first action." 18 *Wright & Miller*, *Federal Practice & Procedure* § 4420 (3d ed.).While some courts have attempted to reconstruct a jury's verdict, it "may be wondered how far a second court should thus pursue the effort to reconstruct the actual decision of the first case. The inquiry may be nearly as burdensome as retrial, and the result may be less certain." *Id.*

The parties over-emphasize certain *obiter dicta* in early bankruptcy court decisions that pre-date the observations of the Supreme Court and Seventh Circuit that issue preclusion applies to dischargeability actions under section 523(a).[5] Specifically, Nelsen refers to a sentence from *In re Wade* noting that if a "state court judgment is obtained fairly, where due process is accorded at all times to the defendant and where the complaint and judgment order are unambiguous that the

[5] *See Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987) (joining the "majority of courts [to] apply collateral estoppel to dischargeability determinations where the state litigation actually and necessarily decided the relevant issue").

judgment debt is of a non-dischargeable nature, bankruptcy courts may find on the basis of the evidence of the state court proceedings alone that the debt is non-dischargeable *so long as the full state court record is before the Bankruptcy Court.*" 26 B.R. 477, 481 (Bankr. N.D. Ill. 1983) (*citing U.S. Life Title Ins. Co. of New York v. Dohm*, 19 B.R. 134, 137 (N.D. Ill. 1982)) (emphasis added). From this statement, Nelsen argues that this Court cannot apply collateral estoppel unless "the full state court record is before" it, and Anderson seeks to produce additional documents from the state court record "as rebuttal evidence" against the argument. But neither the court in *Wade* nor in *Dohm* refused to apply collateral estoppel. To the contrary, both courts found that they had "the full state court record" and entered summary judgment of nondischargeability based on the prior state court judgments. Neither case addressed whether or to what extent an insufficiency in presentment of the state court record would warrant the nonapplication of the doctrine. The cases also pre-date the Seventh Circuit's later detailed enumeration of the standards for application of collateral estoppel or issue preclusion – none of which suggest a "full record" requirement.

Taken in proper context, the Court finds that the comments found in *Wade* and *Dohm* about the "full state court record" simply warn against applying collateral estoppel where it is uncertain from the record provided the meaning and nature of a judgment or whether the facts at issue were actually and necessarily decided. More recently, the court in *In re Mukenschnabl* noted that "in deciding whether a debt is nondischargeable, the bankruptcy court *may* consider both the judgment and the

entire record of the prior suit, including exhibits from that previous proceeding." 643 B.R. 218, 237 (Bankr. N.D. Ill. 2022) (emphasis added). Thus, had they been properly and timely disclosed this Court *could* have considered the jury instructions and Fifth Amended Complaint. But Anderson has failed to show good cause why the Court should allow him to introduce them at this time with complete disregard of the Court's pretrial rulings and order.

Nor must the Court decide whether it is appropriate to take judicial notice of the jury instructions or complaint as Anderson requests in his motion in limine. In determining whether to apply issue preclusion, the Court already has a sufficient record to interpret the state court judgment and jury verdict without reviewing a copy of the complaint, jury instructions or the Braver report. Most notably, the judgment was appealed and the appellate court issued a lengthy written opinion. The appellate court's reasoned decision furnishes ample context and clarity regarding the essential findings and conclusions of the state court and jury in the matter. Anderson fails to show otherwise. Accordingly, the Court finds the jury instructions, the complaint and the Braver report unnecessary to interpret the verdict and judgment. Nelsen's motion to exclude these items, therefore, will be granted.

It is particularly appropriate to exclude them under these circumstances. Anderson at times seems to argue for using the report beyond mere context for the verdict. Indeed, his brief makes numerous references to Braver's vague opinion that the Debtor "embezzled" money – even though there is no state court judgment of

embezzlement for which collateral estoppel would apply.[6] These items being unnecessary to this Court's determination and to avoid any suggestion that the Court relied upon them as substantive evidence, Anderson's motion in limine will be denied.

**B. Considerations for Obtaining Relief under Rule 7052.**

Shortly before the trial was to begin the parties requested the matter be adjudicated under Rule 52(a), through a procedure sometimes referred to as "trial on the papers." *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 885 (7th Cir. 2015) (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir.2001)). "Federal Rule of Civil Procedure 52 permits the Court to conduct a trial on the papers, weigh the evidence, make findings, and resolve factual disputes." *Bogdan v. UFCW Int'l Union Indus. Variable Pension Fund*, No. 25-cv-2671, 2026 WL 2392243, at *1 (N.D. Ill. Aug. 17, 2026). As the Seventh Circuit has explained, "where parties agree to a judgment on stipulated facts, '[i]n effect the judge is asked to decide the case as if there had been a bench trial in which the evidence was the depositions and other materials gathered in pretrial discovery.'" *Hess,* 274 F.3d at 461 (quoting *May v. Evansville–Vanderburgh Sch. Corp.*, 787 F.2d 1105, 1115-16 (7th Cir.1986)). While "facts, to the extent they are stipulated, will not be in dispute," the procedure "is more akin to a bench trial than to a summary judgment ruling." *Id.*

In doing so, the Court partially adopted the structure for briefing from our local rules for summary judgment, Local Rules 7056-1 and 7056-2. (ECF No. 38; *see also*

[6] *See, e.g.,* ECF No. 45 at 43 (alleging "Braver testified that there were indications that there was fraud, that he embezzled the money from Mr. Nelsen, Mr. Anderson, and from Anderson Wilkins, and that he was engaged in an insurance scheme").

ECF No. 60.) The principal feature adopted required the parties to each submit a statement of material facts in support of their motion for judgment, citing and attaching evidentiary support for each. The counterparty was then to admit or deny each statement of fact, citing and attaching evidentiary support for any denial. Failure to deny or properly support denial of a statement of fact was treated as an admission of the fact. *See* Local Rule 7056-2(D). However, unlike summary judgment, inferences were not drawn in the light most favorable to the nonmoving party, and the Court made determinations on material disputes of fact based on the record and exhibits received applying the rules of evidence as if the matter had been fully tried.[7] The parties were warned that the Court would rule on their cross-motions for judgment and there would be no further opportunity for trial.

**C. Exception from Discharge under Section 523(a).**

*i. Section 523(a) Counts - Findings of Fact.*[8]

In 1981, Anderson along with certain other individuals formed Anderson Wilkins Lowe ("AWL"), a company that sold life and health insurance. AWL hired Frank Nelsen to sell insurance products in 1983. Nelsen became a director of AWL in 1985. Eventually the other co-owners sold their stock back to AWL, leaving Anderson

---

[7] Contrast the standards for summary judgment, where at "the summary judgment stage, we construe the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party" and to "survive a motion for summary judgment, [t]he nonmoving party must provide specific material facts showing there is a genuine issue for trial." *37celsius Cap. Partners, L.P. v. Intel Corp.*, 163 F.4th 421, 426 (7th Cir. 2025).

[8] The following findings, together with those set out in the "Discussion and Conclusions of Law" below, set forth the Court's findings of fact and conclusions of law with respect to the section 523(a) counts as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

and Nelsen as the two remaining directors for the remaining relevant times after 1996. Anderson and Nelsen were the co-owners of AWL during this period.[9] Over time Anderson and Nelsen became friends and were business partners in several non-insurance-related ventures. These included a Dippin' Dots franchise ("Forty Below"), a website production company named PSI and a related entity, PSO. The two of them also formed an entity, named Moriah Management, to facilitate the purchase of group health insurance for the employees of their various ventures. Eventually Anderson devoted more of his time to the website production entities PSI and PSO. He did not renew his insurance license after 2006, leaving Nelsen more in charge of AWL and the insurance business.

Between 2007 and 2012, Nelsen submitted paperwork to several insurance companies with which they did business requesting they pay commissions and other payments earned directly to him (as opposed to AWL). Beginning in September 2010, Nelsen was selling insurance only through his sole proprietorship, not AWL. In 2007, Nelsen directed a company called Coventry to make payments directly to him rather than AWL. He informed Anderson about this.

By mutual agreement, Nelsen and Anderson would frequently receive bonuses out of AWL if either of them "needed something for a personal reason." (ECF No. 65 ¶ 21.) However, Anderson later was surprised to learn that Nelsen had taken more

---

[9] Nelsen apparently contends at some point that he was the sole owner of AWL, but the parties agree that the state trial court determined in 2017 that Anderson was also an owner of AWL. *See* ECF No. 65 ¶ 171; *Anderson v. Nelsen*, 2023 IL App (4th) 220801, ¶ 9 ("Initially, both Anderson and Nelsen claimed they owned 100% of AWL. However, in March 2017, the trial court entered an order on the parties' cross-motions for partial summary judgment determining they each owned 50% of AWL.").

out of AWL than he believed was appropriate. Anderson felt "betrayed" and "disappointed" to learn of this. (*Id.* ¶ 26.) Because Nelsen handled AWL's payroll from 1996 through 2012, Anderson did not realize the disparity in their salaries and other draws. (*Id.* ¶ 25.)

In January 2007, Nelsen sold his shares in PSI to Anderson for $500. In 2006 or 2007, Nelsen asked Anderson to repay several debts he claimed PSI owed to Forty Below and AWL. Anderson wrote checks to AWL as requested, totaling approximately $2.3 million.

When in May 2010 Anderson received an email from Nelsen claiming that AWL did not have enough money to pay certain bills, he filed his complaint in Illinois state court seeking an accounting of AWL, Moriah Management, and Forty Below. In 2012 the state trial court entered an agreed order appointing a receiver for AWL, Forty Below, and Moriah Management. *Anderson v. Nelsen*, 2023 IL App (4th) 220801, ¶ 10.

Anderson amended the state court complaint several times, and at some point, the AWL receiver joined it. The fifth amended complaint, filed February 2, 2016, asserted claims by Anderson for breach of fiduciary duty, tortious interference with a business expectancy, and fraud. *Id.* ¶ 6. On behalf of the receiver, he asserted claims for an accounting, for breach of fiduciary duty, for conversion, and for constructive trust. The receiver withdrew from the litigation in late 2017 and was discharged in 2018. *Id.* ¶ 10. Nelsen filed a counterclaim against Anderson, which he amended several times, claiming that Anderson breached his fiduciary duty to Nelsen by

concealing and misrepresenting the terms of an agreement to sell PSI to Wasserman Media Group, LLC for millions of dollars, and for refusing to pursue collection of debts owed to AWL and Forty Below by Anderson, PSO, PSI and other entities. *Id.* ¶ 7.

The parties claims and counterclaims were tried before the state court in 2021. In what that court referred to as a "concurrent bench-jury trial," the jury was tasked with adjudicating Anderson's claims of tortious interference with a business expectancy and fraud, and the trial court adjudicated the breach of fiduciary duty claims. *Id.* ¶ 2. On June 23, 2021, the jury returned a verdict. Its verdict stated: "FOR TORTOUS [sic] INTERFERENCE: Yes; FOR FRAUD: Yes," assessing "the compensatory damages as follows: Lost income: $300,000, Lost benefits: $60,000, The amount of money diverted by Nelsen: $1,351,000, Damage to Anderson's Credit: $25,000, Emotional distress experienced: $1,500,000." (ECF No. 44, Ex. 12.) The jury went on to assess "punitive damages in the sum of $2,500,000" and award total damages in the amount of $5,736,000. (*Id.*) Ruling on the fiduciary duty cross-claims, the trial court held that "[b]oth of these gentlemen breached the fiduciary duty at some point in time that they had with each other and thereby since both of them breached their duty, neither one of them . . . came into this court of equity with clean hands." (ECF No. 44, Ex. 26 at 8-9.) Noting that breach of fiduciary duty is an equitable claim, the court denied each party's breach of fiduciary duty claim on the basis of the unclean hands equitable defense. In doing so the court emphasized its ruling does not "subtract from or add to the jury verdict. The jury verdict I've already entered a judgment on." (*Id.* at 8.)

Nelsen moved to modify the judgment. While the trial court mostly denied his motion, it accepted the argument that the portion of damages for "money diverted" should be reduced in half because Nelsen was a half-owner of AWL and reduced that portion of the award to $675,500. *Anderson v. Nelsen*, 2023 IL App (4th) 220801, ¶ 54. The Illinois 4th District Appellate Court affirmed the judgment, except for the verdict awarding $25,000 for "damage to credit." The appellate court found that to be unsupported by evidence from which the jury could have come to that amount "without engaging in speculation or conjecture." *Id.* ¶ 96.

ii. *Section 523(a) Counts - Conclusions of Law.*

Like other federal trial courts, bankruptcy courts "do not sit as courts of review of state court orders." *In re EHC, LLC*, 561 B.R. 692, 694 (Bankr. N.D. Ill. 2017) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The Full Faith and Credit Act requires judicial proceedings to be given the same full faith and credit in every court within the United States as they have in the courts of the state from which they are taken. 28 U.S.C. § 1738. This requires a federal court to "apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls this case," and the same is true for "collateral estoppel, or issue preclusion." *Robbins v. Med-1 Sols., LLC*, 13 F.4th 652, 656-57 (7th Cir. 2021).

Bankruptcy courts "have exclusive jurisdiction to decide the dischargeability of debts under §§ 523(a)(2), (a)(4), and (a)(6)," such that *res judicata* does not apply to state court rulings on such claims. *Harshaw v. Harshaw (In re Harshaw)*, 26 F.4th

768, 776 (7th Cir. 2022). But it "is well established . . . that the doctrine of collateral estoppel, or issue preclusion, applies in bankruptcy discharge exception proceedings." *Burke v. DeFranco (In re DeFranco)*, 658 B.R. 470, 482 (Bankr. N.D. Ill. 2024) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Klingman v. Levinson*, 831 F.2d 1292, 1294-95 (7th Cir. 1987)). Issue preclusion bars relitigation of the same factual issues and thereby "lessens the cost and vexation of multiple lawsuits, and prevents the issuance of inconsistent decisions." *Id.* at 483 (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 942 (Bankr. N.D. Ill. 1991)).

For collateral estoppel to apply, Illinois law requires:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Renew Packaging, LLC v. Ferro (In re Ferro)*, 639 B.R. 498, 502 (Bankr. N.D. Ill. 2022) (quoting *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381 (2001)). There is no dispute that the second and third requirements are met here as the state court proceeding involved the same parties and the judgment was final prior to the bankruptcy petition. As to the first element, "if the jury's findings are inconclusive or were not necessary to the state court judgment, then issue preclusion does not apply." *Gerard v. Gerard*, 780 F.3d 806, 810 (7th Cir. 2015).

The jury verdict supporting Anderson's judgment included a finding of fraud. The elements for common law fraud in Illinois are "(1) a false statement of material

fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Farmer v. Trans Chi. Truck Grp.*, 2026 IL App (1st) 251366-U, ¶ 30 (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496 (1996)). "A party alleging fraud must demonstrate that it justifiably relied on another's misrepresentations." *Id.* ¶ 31 (citing *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 560 (2003)).

Section 523(a)(2)(A) makes nondischargeable a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). This requires a showing "(1) that [Debtor] made a false representation or omission, which he either knew was false or made with reckless disregard for the truth; (2) that [Debtor] possessed an intent to deceive or defraud; and (3) that [Plaintiff] justifiably relied on the false representation." *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011). In *Davis*, the court found that a state court's judgment that the debtor had violated the Indiana Home Improvements Contracts Act where it made no determination as to intent "did not prevent the litigation of that issue in the bankruptcy court." *Id.* at 554. In contrast here, by finding that Nelsen committed fraud under Illinois common law, the jury determined that he knowingly made one or more false statements with the specific intent to induce Anderson to act, and that Anderson justifiably relied upon those misrepresentations.

Similarly, the jury's verdict that Nelsen tortiously interfered with a business expectancy of Anderson establishes the nondischargeability of the judgment under 11 U.S.C. § 523(a)(6). That section excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Nondischargeability requires a showing of "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). "Injury" means a "violation of another's legal right, for which the law provides a remedy." *Id.* Willfulness requires a "deliberate or intentional injury" which can be found where the "debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Id.* Maliciousness requires a debtor's action "in conscious disregard of his duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.*

To prevail on a claim of tortious interference with a business expectancy in Illinois the plaintiff must demonstrate "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference." *Silverthorne Dev. Co. v. Sycamore Creek Homeowners Ass'n*, 2025 IL App (2d) 240703-U, ¶ 17. In *Horsfall,* the court found that for the determination of a nondischargeability claim brought under § 523(a)(6), collateral estoppel would bar relitigating the elements of injury and maliciousness for a judgment of tortious interference under Wisconsin law. This finding, however, did not apply to the

willfulness element, the court held, because the underlying Wisconsin claim did not require "showing intent to injure." 738 F.3d at 775. In contrast, to prevail on a claim of tortious interference with a business expectancy under Illinois law requires the plaintiff to show that "the defendant acted intentionally with the purpose of injuring the plaintiff's expectancy." *Cmty. Home Physicians, LLC v. De La Mora*, 2026 IL App (3d) 250174-U, ¶ 55; *Fid. Nat'l Title Ins. Co. of New York v. Westhaven Props. P'ship*, 386 Ill. App. 3d 201, 219 (2007)). "An allegation of some impropriety on the defendant's part is necessary to sustain a cause of action." *De La Mora*, 2026 IL App (3d) 250174-U, ¶ 55 (citing *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 36). Thus, "a judgment for tortious interference with prospective economic advantage under Illinois law necessarily satisfies the requirement in Section 523(a)(6) of the Bankruptcy Code that the injury be inflicted 'maliciously.'" *In re Ferro*, 639 B.R. at 503.

Under either of the jury's two determinations the judgment is nondischargeable. Similarly, although the verdict form does not clarify whether any particular form of damages apply to the fraud or the tortious interference claim or both, the judgment is nondischargeable under either theory. The Supreme Court has held that section 523(a)(2)(A) "bars the discharge of *all liability arising from* fraud," including "treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor" but which is included in a fraud claim under nonbankruptcy law. *Cohen v. De La Cruz*, 523 U.S. 213, 222-23 (1998) (emphasis added). Similarly, "consequential and punitive damages 'derivative from the injury that the debtor

committed intentionally' may also be non-dischargeable under Section 523(a)(6)." *Taylor v. Snyder (In re Snyder)*, 542 B.R. 429, 437 (Bankr. N.D. Ill. 2015) (quoting *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012)). *See also, e.g., Chuipek v. Gilmore (In re Gilmore),* 590 B.R. 819, 840-41 (Bankr. N.D. Ill. 2018) (finding entire judgment debt, including compensatory and other damages, such as for emotional distress, interest, and attorneys' fees, to be nondischargeable under section 523(a)(6)). Accordingly, judgment shall be entered in the Plaintiff's favor on Counts V and VII.

The Court's findings of nondischargeability under sections 523(a)(2)(A) and (a)(6) practically render moot most if not all of Anderson's request to except the judgment under section 523(a)(4). But section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523. Anderson cannot rely on collateral estoppel to establish either of his section 523(a)(4) counts. The state court entered judgment for the defendant on Anderson's breach of fiduciary duty claim but not on the conversion claim.[10] Furthermore, "embezzlement is shown where the debtor had sole access to the creditor's funds, and despite knowing that the creditor wanted the funds returned, surreptitiously took them for his own benefit." *Pnevmatikos v. Pappas (In re Pappas)*, 676 B.R. 397, 406 (Bankr. N.D. Ill. 2026). On this point Anderson alleges only that "Nelsen appropriated *AWL's* funds for his personal benefit," not that he appropriated *Anderson*'s funds. (ECF No 45 at 41.) Anderson's description of his claim

[10] As noted by the appellate court, prior to trial the receiver "filed a motion for leave to decline further pursuit of litigation in the case," was discharged and the "parties ultimately did not proceed with the other claims alleged in the fifth amended complaint and second amended counterclaim, including AWL's claim for conversion." *Anderson v. Nelsen*, 2023 IL App (4th) 220801, ¶¶ 10, 14.

refers to times when Nelsen caused commissions to be paid directly to himself rather than to AWL. While such behavior might have violated a fiduciary duty to AWL by usurping a corporate opportunity, Anderson fails to show that it involved a taking of AWL's *funds*, much less his own.[11] The parties have forgone an evidentiary hearing in this matter and so Anderson is left with the record as presented to the Court. From that, the Court finds that Anderson has not met his burden of demonstrating fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Finally, Nelsen urges the Court to apply the unclean hands doctrine with regard to all of Anderson's claims of non-dischargeability. "The defense of unclean hands is equitable and not bound by precise elements." *Adair v. Stutsman Constr., L.L.C. (In re Adair)*, 137 F.4th 384, 388 (5th Cir. 2025). It is based on a requirement that a plaintiff "shall have acted fairly and without fraud or deceit as to the controversy in issue." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015). But the doctrine "does not mean that courts must always permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law." *Id.* at 960 (quoting *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944)). Nelsen also chose to rely on the paper record presented, forgoing trial and the opportunity for testimonial evidence and additional exhibits that might support an affirmative defense. The

[11]For Anderson's embezzlement theory, he seems to rely primarily on a stipulation about the testimony of an expert witness in the state court trial, who was never offered or qualified in this proceeding, that "based on his review of the documents, there were indications that Nelsen embezzled funds from AWL." (ECF No. 65 ¶ 175.) Vague allegations about expert testimony in other proceedings are insufficient to meet the Plaintiff's burden in this case.

paper record he identifies for this claim and on which he relies instead is made up primarily of docket entries. Combing through this limited record, the Court cannot find that Anderson's alleged misstatements and actions in connection with the proposed sale of PSI to the Wasserman Group are of such nature and sufficiently connected to the fraud and tortious interference claims to support Nelsen's unclean hands defense.

## IV. CONCLUSION

For the reasons stated above, Nelson's motion to exclude a report and testimony of a purported expert in the state court proceeding and a certain pleading and the jury instructions from that matter is granted (ECF No. 62), and Anderson's motion in limine for the admission of jury instructions and for other relief is denied. (ECF No. 64) The parties cross-motions for judgment on the counts brought under 11 U.S.C. § 523(a) will be granted in part and denied in part, and judgment will be entered in favor of the Plaintiff on Counts V and VII and in favor of the Defendant on Counts VI and VIII. The matter is continued for status to December 3, 2026, for the parties to provide the parties the opportunity to consider whether to go forward on the remaining counts under 11 U.S.C. § 727(a) in light of these rulings.

DATE: November 17, 2026

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge